McGEE v. FERGUSON SEED FARMS, Inc.

No. 3524.

Court of Civil Appeals of Texas. Amarillo.

Jan. 7, 1931.

W. W. Kirk and B. H. Oxford, both of Plainview, for appellant.

Dennis Zimmermann, of Tulia, for appellee.

RANDOLPH, J.

J. T. McGee, appellant, brought this suit against the Ferguson Seed Farms, Inc., to re-cover damages incurred by reason of a cotton seed transaction had with the Ferguson Seed Farms, a corporation. The trial court sustained a general demurrer to the plaintiff's petition, and the plaintiff has appealed to this court.

The plaintiff in his fourth amended original petition alleges his cause of action, as follows:

"That plaintiff is a resident of Hale County, Texas, and the defendant, Ferguson Seed Farms, Incorporated, is a private corporation duly organized under and by virtue of the laws of the State of Texas, with its principal place of business in Sherman, Grayson County, Texas, and has as its President and Secretary, respectively, A. M. Ferguson and Sam C. Johnston, both of whom reside in said city of Sherman.

"That plaintiff brought and filed this suit in this court on the 21st day of December, 1926, against the Ferguson Seed Farms, which was a private corporation, duly incorporated under the laws of the State of Texas, on the 4th day of August, 1916, and which continued as such until the 30th day of April, 1925, for the purpose of growing, selling and purchasing seeds, plants, trees, etc., for agricultural, horticultural and ornamental purposes and to purchase and lease all lands necessary for those purposes, which said corporation was dissolved upon the application of all of its stockholders on the 30th day of April, 1925, before and at which time, said Ferguson and Johnston were its officers, respectively.

"That sometime during the Spring of 1924, and prior to the 27th day of that year, just what date plaintiff cannot now state, said Ferguson and Johnston, as such officers and representatives of said corporation, approached plaintiff, in Hale County, Texas, for the purpose of selling to him cotton seed. with which to plant about 1,000 acres to cotton, during the season of 1924, and did sell to him such seed to plant about said acreage to cotton, on four farms located in Hale County, Texas, as hereinafter alleged, upon the representations by them to him made, as hereinafter set forth.

"That at the time this suit was filed the Ferguson Seed Farms had been dissolved upon the application of all of its stockholders, which plaintiff did not know at the time of filing this suit and did not know until the 22nd day of October, 1929, the day before which defendant filed a Plea in Abatement, setting up that at the time of filing this suit Ferguson Seed Farms had been dissolved, after learning which plaintiff, with permission of the court, filed his Second Amended Original Petition, asking the court to permit him to substitute as defendant Ferguson Seed Farms, Incorporated, and to over-rule plain-

tiff's Plea in Abatement, which the court did, and both parties announced ready for trial and after the defendant introduced in evidence upon its Plea in Abatement a certified copy of the charter of the Ferguson Seed Farms and its application for dissolution, plaintiff asked the court to withdraw his announcement and to permit him to amend his pleading, which the court did, and this cause was continued for trial to this term of this court, and after this term of this court convened, this cause was set down for trial for June 20, 1930, and being called for trial this court sustained a general demurrer to plaintiff's pleadings, after which plaintiff asked the court to permit him to file his Fourth Amended Petition.

"That at the time this suit was filed the Ferguson Seed Farms had been dissolved and the Ferguson Seed Farms, Incorporated, had been incorporated, the latter of which, plaintiff did not know until sometime in August, 1927; that at the January term, 1927, of this court, L. D. Griffin, attorney of record for the defendant, as the suit then appeared on the docket of this court, filed an answer in this suit for the Ferguson Seed Farms, a corporation, interposing a general demurrer, special exceptions and general denial; that, from the deposition of said A. M. Ferguson, taken by plaintiff during August, 1927, it was stated by him that the defendant was then operating and doing business under the name of Ferguson Seed Farms, Incorporated, immediately after which counsel for plaintiff took the matter up with L. D. Griffin, attorney of record, at that time for the defendant of the name of the defendant, with the view of correcting the name of the defendant in this suit, and in doing so, was assured by L. D. Griffin that no question as to the name of the defendant would ever be raised and suggested that the name of the defendant be continued in the name of Ferguson Seed Farms, and thereafter, towit: on the 21st day of September, 1928, appeared in this court upon the call for trial of this cause, at which time both parties announced ready for trial and this case was tried upon the pleadings then filed in this court by a jury and a verdict rendered in favor of plaintiff, which was, upon motion of the defendant, as Ferguson Seed Farms, set aside by this court.

"That for the year and season of 1924, plaintiff leased the following farms located in Hale County, Texas, for the purpose of planting same to cotton, during said season, from the respective parties named and containing the respective acreages in cultivation, and being the four farms hereinbefore referred to, to-wit: 300 acres from the Southland Life Insurance Company; 400 acres from J. W. Oswald and Wayne Paxton; 160 acres from J. C. Anderson and 130 acres from C. V. Bryson, under a rental contract for each of said tracts with the owners thereof. plaintiff was to pay to the landlords ¼th of the net proceeds of the cotton and seed grown thereon during said season, or to give each of the owners of said tracts of land ¼th of the cotton and seed grown during said season, and the owner was to pay ¼th of the ginning of the cotton.

"That both of said corporations were incorporated for identically the same purposes, the first of which was in existence at the time of the incorporation of the latter, May 8, 1924, and the former continued in business and in existence until April 30, 1925, during which time both had the same officers and representatives, occupied the same office and transacted the same business, sometimes in the name of the one and sometimes in the name of the other.

"That of the seed so purchased from Ferguson Seed Farms, 173.38 bushels were to be and were planted on the land of Southland Company; 231.1 bushels on the land of Oswald and Paxton; 92.44 bushels on the J. C. Anderson land, and 75.11 bushels on the C. V. Bryson land; that at the time of the sale and purchase of said seed, no written contracts between the seller and purchaser was entered into, but that on May 27, 1924, plaintiff signed four written contracts, covering the purchase of said seed, two of which were signed by the Ferguson Seed Farms, by said A. M. Ferguson as its president, just which two he does not now recall and just how the other two were signed as the seller, plaintiff does not know, but says the defendant has said contracts and is hereby notified to produce them on the trial of this cause.

"That during the month of July, 1926, Ferguson Seed Farms, as plaintiff, filed four suits in County Court of Hale County, Texas, against plaintiff as defendant on said contracts by reason of plaintiff's failure to pay for said seed, three of which were settled without trial, and on the 25th day of October, 1926, Ferguson Seed Farms, as plaintiff, recovered a judgment against plaintiff as defendant for the sum of $519.97 as purchase price for the seed planted on the Oswald and Paxton farm, with interest thereon from date of judgment until paid at the rate of ten per centum per annum, and all costs of suit. the latter of which has not been paid.

"That the assets of the Ferguson Seed Farms, including said contracts plaintiff had with it, became the property of the Ferguson Seed Farms, Incorporated, and the former corporation became merged into the latter on May 8, 1924, and that officers and representatives of the former corporation became the officers and representatives of the latter, and continued in such capacities for both corporations after the organization of the latter until April 30, 1925, and the stockholders of the former corporation became the stock-

holders in the latter, and the latter thereby became liable to plaintiff for any injury he might have sustained as the result of the sale of said cotton seed to him by Ferguson Seed Farms and Ferguson Seed Farms, Incorporated, is estopped from denying liability on account of the name it was originally sued on and is estopped from entering a Plea in Abatement to this suit, not having ever raised any issue to its identity by way of such Plea until the 21st day of October, 1929, and in this amendment plaintiff asks to incorporate as the defendant in this case the Ferguson Seed Farms, Incorporated.

"That the plaintiff is now and was during the cotton planting season of 1924 engaged in farming, growing among other things cotton for market and for the year and season of 1924 for the purpose of planting to cotton had leased the four tracts of land hereinbefore described.

"That sometime about May 1, 1924, the Ferguson Seed Farms Company, by and through its President, A. M. Ferguson, and Secretary and General Manager, Sam C. Johnston, approached plaintiff in Hale County, Texas, knowing that he was a farmer and growing cotton for market, inquired of plaintiff of the acreage he intended to plant to cotton during said season and the location thereof and proposed to sell to him cotton seed with which to plant same to cotton during said season, and represented to him in that connection that said Ferguson Seed Farms was then and long prior thereto had been engaged in the production of various staple field crops, including all known strains of cotton, in different parts of Texas, including Hale County, and in different soils, by long continued applications of scientific breeding methods and progressive selection processes of seeds and had tested out by such methods and processes the productiveness of all strains of cotton, including Acala and Mebane, per acre and by such methods and processes had produced a new and superior strain of cotton, known as the 'Ferguson Triumph No. 406' and that the seed of which if planted and cultivated under similar and like conditions anywhere in Texas, including Hale County, would produce more cotton per acre than the seed from any other known strain of cotton, including Acala and Mebane cotton. In reply to which statement plaintiff informed said Ferguson and Johnston that he had several acreages to plant to cotton during said season and the location of each tract and had a sufficient quantity of mixed Acala and Mebane cotton seed on hand with which to plant said total acreage to cotton during said season and that he intended to plant said total acreage with said seed. And that he knew nothing of the productiveness of the seed which defendant proposed to sell to him. After such reply of plaintiff to them, its said officers again represented to him that from its tests in growing cotton in different parts of Texas, by such methods and processes it knew that the seed of the cotton it had so produced and which it proposed to sell to plaintiff, if planted on the lands plaintiff had so leased, during said season under like conditions and cultivated in the same manner, would produce more cotton per acre than the seed he so had on hand would produce, and advised plaintiff to sell or dispose of the seed he had on hand and to purchase its said seed with which to plant all of said tracts of land to cotton during said season.

"And that relying upon and believing said representations to be true so made to him by the defendant, plaintiff, sometime about May 1, 1924, at which time said representations were made to him, purchased from Ferguson Seed Farms a sufficient quantity of said 'Ferguson Triumph No. 406' cotton seed with which to plant said acreage to cotton during said season and which quantity of seed so purchased were delivered to plaintiff by it and with which he did plant said acreage with said seed purchased from it, and having said acreage then prepared in a farmer-like manner to plant to cotton, among other things, plaintiff agreed to seasonably plant same with the said seed and cultivate the plants therefrom in a farmer-like manner and to seasonably gather and harvest the cotton produced therefrom. And that, having said land so prepared, plaintiff did seasonably, properly and in a farmer-like manner plant the same to cotton with the seed so purchased from Ferguson Seed Farms and after the seed had germinated and come up, he properly and seasonably picked and harvested all the cotton produced by each of said tracts of land and finished harvesting same in February, 1925, and each tract thereof respectively produced the following number of bales of ginned cotton, averaging in weight 500 pounds each, 45, 113, 34 and 31 bales.

"And that after so purchasing said seed from Ferguson Seed Farms, by and through its said agents, plaintiff sold the cotton seed he had on hand with which he was to plant said acreages to cotton, and planted same to cotton with the seed so purchased from it, which he would not have done but for such representations so made to him by Ferguson Seed Farms, and could have and would have cultivated the same in the same manner on the land he so had prepared, as he did the cotton grown by the seed purchased from the defendant, and would have and could have as seasonably picked and harvested the cotton grown from the seed he so had on hand, and had he done so, each of said tracts of land would have produced the following number of bales of cotton, averaging 500 pounds each, respectively, as follows: 150, 87, 46 and 34 more bales of cotton than each of them produced from the seed with which it was plant-

ed to cotton from the seed so purchased from Ferguson Seed Farms, which additional bales of cotton he could have and would have harvested and would have sold same on the same market on which he sold the cotton produced from the seed he purchased from Ferguson Seed Farms and would have received from the sale of said additional bales 20¢ per pound, same being the market price on said market of such cotton and such cotton generally during said season. That the cost of picking said additional bales of cotton would have been $23.00 per bale and the cost of ginning of the same, in addition to letting the ginner have the seed therefrom, which plaintiff could have and would have done, which would have been $2.00 per bale, which price of picking and ginning being the usual and customary respective prices during said season.

"And that said representations so made to the plaintiff were false and fraudulent at the time made, and Ferguson Seed Farms knew them to be false when so made, and they were made by it to deceive and induce him to sell the seed he so had on hand and to purchase from it the seed he did so purchase, and which representations did deceive him and induce him to sell his said seed and to purchase the seed he did purchase from it; and that at the time said representations were so made to plaintiff, he relied upon them, and did not know they were false, otherwise he would not have purchased said seed and would not have sold his said seed and would have planted said acreages to cotton with them.

"That if Ferguson Seed Farms had been so engaged in the production of cotton seed and had produced such a new and superior strain of cotton and the seed from which would produce more cotton per acre, as represented by it than any other strain of cotton, then plaintiff says that it did not deliver to him the seed he had so purchased from it, but knowingly and fraudulently delivered to plaintiff another and different seed which would not make as much cotton per acre planted on lands so prepared, cultivated and harvested as its said seed would have produced. And in this connection plaintiff informs the court that he had never seen any cotton seed from the cotton defendant claimed to have so produced, and had never seen any cotton growing or grown therefrom and had never seen or heard of anyone else, other than said officers of the defendant, who claimed to have seen any cotton growing or grown from the seed from the cotton Ferguson Seed Farms claimed to have so produced, all of which said officers of it knew at the time said representations were made.

"And that as a proximate result of either of said false and fraudulent representations so made to plaintiff by Ferguson Seed Farms, by and through its said officers, or as the proximate result of its knowingly and fraudulently, by and through its said officers delivering to plaintiff another and different strain or kind of cotton seed than that he had so contracted to purchase from it, plaintiff sustained damages in the sum of $15,500.00, which is long since past due and unpaid and notwithstanding heretofore requested, defendant has failed and refused and still refuses to pay the same or any part thereof.

"Premises considered, the defendant, Ferguson Seed Farms, Incorporated, having appeared and filed an answer herein at the last term of this Court, plaintiff prays upon hearing hereof, he have judgment against the defendant, the Ferguson Seed Farms, Incorporated, for the sum of $15,500.00, less a credit of $519.97, with interest thereon from October 25, 1926, at the rate of ten per centum per annum, with interest on the balance at the rate of six per centum per annum from such date as the proof may show upon the trial of this cause that this cause of action accrued and all costs of suit."

The appellee asserts the correctness of the trial court's judgment in sustaining such general demurrer because said petition was defective in showing a cause of action against it in several particulars. Some of these reasons we will now discuss.

Appellee's first and second counter propositions will be considered together.

"First counter proposition. Appellant's cause of action, if any he had, being against the Ferguson Seed Farms, a corporation, which was dissolved prior to the filing of this suit, died with such dissolution and no sufficient allegations are made showing a ground of recovery against the Ferguson Seed Farms, Inc., another and different corporation.

"Second counter proposition. Fraudulent representations made by the officers of one corporation in obtaining a contract are not actionable against another corporation not in existence at the time of such alleged misrepresentations."

Third proposition. In this the defendant pleads the bar of the two-year statute of limitation.

If we grant the sufficiency of the petition to charge by intendment that A. M. Ferguson, as president, and Sam C. Johnston, as secretary, are the agents of the Ferguson Seed Farms, a private corporation, and that they made the misrepresentations as alleged, then we are confronted with the fact that as such agents they made the misrepresentations for and on behalf of one corporation, and that the plaintiff is suing another corporation to recover damages for misrepresentations which were not made in its behalf.

It is true that the petition alleges the misrepresentations as being made by the named

342

officers of the Ferguson Seed Farms, a corporation. It also alleges that the two held like offices in the Ferguson Seed Farms, Inc. In addition, however, it is alleged that the Ferguson Seed Farms had been dissolved on the 30th April, 1925, and this suit was not filed until the 21st December, 1926, and was brought against the Ferguson Seed Farms, a corporation, subsequent to its dissolution. When it was discovered that such corporation had been dissolved, the fourth amended original petition then recited the above facts and made the Ferguson Seed Farms, Inc., the defendant. Therefore the suit, being originally brought against the dissolved corporation, was amended, and judgment asked against the Ferguson Seed Farms, Inc. The filing of this fourth amended original petition was more than five years after the making of the alleged misrepresentations charged to have been made by the officers of the dissolved corporation.

■When the corporation known as the Ferguson Seed Farms was dissolved, if there were any obligations existing against such corporation, such obligations could have been enforced against the property of the dissolved corporation by a suit against the president and directors or managers of same.

Article 1388, R. C. S. of Texas 1925, provides:

"*Liquidation by Officers.*—Upon the dissolution of a corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property. Said trustees shall

be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

■A proceeding against a dissolved corporation under this article is in the nature of an administration upon the estate of the old corporation to make the common fund answerable for the debts which were created on the credit of that fund. Lyon-Gray Lumber Co. v. Gibraltar Life Ins. Co. (Tex. Com. App.) 269 S. W. 80, and cases therein cited.

■It is also held that under this article a judgment may be rendered against a dissolved corporation. Chevrolet Motor Co. of Texas v. Morris Auto Co. (Tex. Civ. App.) 269 S. W. 872.

Instead of proceeding against the officers of the dissolved corporation, as provided by the act, the plaintiff apparently abandons his cause of action against the dissolved corporation.

■Article 1389, R. C. S., 1925, provides for a continuance of a corporation for three years after its dissolution for the purpose of enabling those charged with the duty to settle up its affairs. Therefore, not only is it apparent that the plaintiff is seeking to hold the Ferguson Seed Farms, Inc., for misrepresentations alleged to have been made by agents of the Ferguson Seed Farms, a corporation, but it is also asserting this right after a period of more than five years between the time of the representations alleged to have been made and the filing of the fourth amended original petition first asserting this right. Hence the cause of action, if any, was barred by the statute of limitation of two years; the suit being for misrepresentations and not being based on the written contracts.

■The allegations as to the dissolution of the one corporation and the merger of both are so inconsistent that the petition cannot stand. Barry v. Screwmen's Benevolent Association, 67 Tex. 250, 3 S. W. 261; Rowe v. Horton, 65 Tex. 89; Stephens v. Stephens (Tex. Civ. App.) 281 S. W. 1096; Baker v. Galbreath (Tex. Civ. App.) 211 S. W. 626; Snipes v. Oil Co., 106 Tex. 181, 161 S. W. 1.

We therefore hold that the trial court did not err in sustaining the general demurrer to the petition, and we affirm such judgment.